IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GUY BANKS,                         )
                                   )
    Plaintiff,                     )
                                   )
VS.                                )    No. 04-1216-T
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
    Defendant.                     )

## ORDER REVERSING COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff Guy Banks filed this action to obtain judicial review of the defendant Commissioner's final decision denying his application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Plaintiff's application for benefits was denied initially and upon reconsideration by the Social Security Administration. At the plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on July 18, 2002. On August 14, 2002, the ALJ issued a decision finding that plaintiff was not disabled, and the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff subsequently filed a complaint in this Court, seeking review of the Commissioner's final decision.

## Standard of Review

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. See 42 U.S.C. § 405 (g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Commissioner of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Drummond v. Commissioner of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Cutlip v. Secretary of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Her, 203 F.3d at 389; Drummond, 126 F.3d at 840; Cutlip, 25 F.3d at 286. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. Walters, 127 F.3d at 528 (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip, 25 F.3d at 286. In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286). If reversal is warranted, a court may immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Secretary of Health and Human Serv., 17 F.3d 171, 176 (6th Cir. 1994).

## Background of the Case

On the date of the administrative hearing, plaintiff was forty-eight years of age. He has a high school education, with past relevant work experience as a pipe insulator, painter and siding installer. He alleges that he became disabled on April 1, 1996, due to a variety of impairments including chronic obstructive pulmonary disease ("COPD"), chronic back pain, osteoporosis and depression.

In his decision, the ALJ made the following findings: (1) there is no basis for reopening the final decision on plaintiff's prior application, issued March 19, 1999, and the issue of disability during the previously adjudicated period is *res judicata*[1]; (2) plaintiff has an impairment or combination of impairments that is "severe" based on the requirements in the Regulations, 20 C.F.R. § 416.921; (4) these impairments do not meet or equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) plaintiff's allegations and testimony are not credible; (6) plaintiff has the residual functional capacity to lift a maximum of ten pounds, stand and/or walk a total of two hours in an eight-hour workday and sit a total of six hours in an eight-hour workday, and should avoid concentrated exposure to pulmonary irritants, *i.e.*, fumes, odors, dust, gases, poor ventilation, etc., and is limited to the performance of unskilled tasks; (7) plaintiff is unable to perform his past

---

[1] Plaintiff's previous application for SSI benefits, which also alleged a disability onset date of April 1, 1996, was filed on December 8, 1998. Plaintiff apparently did not pursue that application past the initial denial. The ALJ construed the allegation of the same onset date in this application as an implied request to reopen that prior determination. However, the ALJ found there was no new and material evidence that warranted doing so, and dismissed that request. (R. 24, 32-33.)

relevant work; (8) based on an exertional capacity for sedentary work and the plaintiff's age, education and work experience, § 416.969 of Regulations No. 16 and Rule 201.21, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4 direct a conclusion of "not disabled"; and (9) plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. 42 U.S.C. § 423; see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4. An individual who can perform work that she has done in the past will

4

>     not be found to be disabled.
> 5.  If an individual cannot perform her past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989). Here, the analysis proceeded to the fifth step, where the ALJ used the medical-vocational guidelines to determine that, based on plaintiff's age, education, past work experience and residual functional capacity, there was other work that he could perform. Plaintiff, however, contends that the ALJ's determination that he has the residual functional capacity to perform sedentary work is not supported by substantial evidence.

The ALJ concluded that plaintiff suffers from a combination of COPD, diffuse osteoporosis, Hepatitis C and depression. The objective medical evidence in the record shows that plaintiff was diagnosed with severe diffuse osteoporosis at the Veterans Administration ("VA") Medical Center in Memphis, Tennessee, in May 2001, for which he was later prescribed Fosamax as well as calcium and vitamin D supplements. Plaintiff reported chronic, intermittent back pain, for which he obtained some relief with Naproxen and Acetaminophen. On April 6, 2001, he was diagnosed with Hepatitis C, but was advised that he would have to be alcohol-free for six months before he could begin treatment. (R. 195-218.) Plaintiff testified at the administrative hearing on July 18, 2002 that because

5

he continued to drink occasionally, he still had had no treatment for the Hepatitis C.

On January 11, 2001, plaintiff underwent a consultative psychological evaluation. The examiners' diagnostic impressions were depressive disorder and alcohol abuse. Plaintiff was given a current Global Assessment Functioning score of 65, indicating mild symptoms and difficulty functioning. The examiners indicated that plaintiff had only mild limitations with regard to social interaction and social stressors. (R. 145-149.)

Plaintiff underwent a consultative examination by Dr. Donita Keown on January 23, 2001. Plaintiff reported to Dr. Keown that he had been diagnosed with COPD fourteen years previously, but that he continued to smoke two packs of cigarettes a day. Plaintiff was not appreciably short of air at baseline, but reported that he became short of breath with minimal activity. Plaintiff was using metered dose inhalers for the COPD. He complained of chest pain caused by severe coughing spells, and a ten-year history of back pain. Dr. Keown's examination showed slightly diminished breath sounds, but no wheezing or rale. She ordered spirometric pulmonary function tests, but failed to interpret the results. Dr. Keown's examination of plaintiff also showed flexion of the lumbar spine to 90 degrees, but with pain. She observed moderate kyphosis in the thoracic spine consistent with osteoporosis, but did not order any radiological tests. Sufficiently severe spinal deformities can affect the interpretation of pulmonary function testing in some individuals. Dr. Keown assessed plaintiff as having the ability to sit, stand or walk for six hours in an eight-hour workday, and to lift fifteen pounds frequently and thirty pounds occasionally. (R. 150-161.)

Treatment notes from the VA Primary Care Clinic dated February 13, 2002 indicate that examination of plaintiff's lungs showed fair air movement with decreased breath sounds bilaterally. His COPD was assessed as "stable" and he was again encouraged to stop smoking. Plaintiff requested a home nebulizer machine, stating that he had used his sister's and it seemed to help him. The next day, a respiratory therapist evaluated plaintiff and recommended that he continue using the metered dose inhalers he was previously prescribed. (R. 186-193.)

Due to Dr. Keown's failure to interpret the results of the pulmonary function tests, plaintiff requested Dr. Michael Hellman to examine plaintiff and to review and interpret those test results. The examination took place on June 27, 2002. Dr. Hellman did not submit his actual clinical notes from that examination, only a Medical Source Statement. Dr. Hellman expressed his medical opinion that plaintiff had disabling pulmonary disease, based upon the pulmonary function tests results. (R. 219.)

Dr. Hellman then indicated, based upon the examination, that plaintiff was significantly restricted in his ability to perform many physical activities. Dr. Hellman found that plaintiff could not walk for more than thirty minutes without interruption, lift and carry more than twenty pounds, push or pull more than twenty pounds, or engage in postural activities such as climbing, balancing, stooping, crouching, kneeling and crawling. Dr. Hellman also indicated that plaintiff should avoid activities involving heights, moving machinery, dust and fumes. Dr. Hellman further indicated that these limitations were based

7

on specific clinical findings from his examination of plaintiff.[2]  Based on all of these findings, Dr. Hellman stated his opinion that plaintiff would be unable to perform any gainful employment for which he is qualified for the next twelve months. (R. 220-222.)

It is evident from the record that whether plaintiff is disabled turns on the severity of his COPD. However, the record contains inadequate medical evidence on that issue. As indicated, *supra*, even though pulmonary function tests were ordered by Dr. Keown, the consultative physician, she failed to interpret the test results. Consequently, plaintiff requested that Dr. Hellman review and interpret those results.

Dr. Hellman's interpretation of those pulmonary function tests is flawed. In stating his opinion that the tests showed that plaintiff suffered from disabling pulmonary disease, Dr. Hellman relied upon the medical-vocational guidelines listing of impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, he relied upon listing 3.02, Chronic Pulmonary Insufficiency. The preamble to that listing states, "[r]espiratory impairments usually can be evaluated under these listings on the basis of a complete medical history, physical examination, a chest x-ray or other appropriate imaging techniques, and spirometric pulmonary function tests." Significantly, there is no evidence that either Dr. Keown or Dr. Hellman ordered a chest x-ray or any other imaging technique done on the plaintiff.

The results of pulmonary function tests (spirograms) are reported as $FEV_1$ (forced expiratory volume) and FVC (forced vital capacity) values. The preamble to listing 3.02

---

[2] As noted, Dr. Hellman failed to submit his actual clinical notes for inclusion in the record.

8

goes on to state:

> Two of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests. A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 [liter], whichever is greater. The highest values of the $FEV_1$ and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment.

In this case, none of the pre-bronchodilator values, and only one of the post-bronchodilator values was reproducible. Thus, Dr. Hellman's reliance upon those results to determine that plaintiff's condition met or equaled listing 3.02 was unwarranted.

Notwithstanding the questionable validity of the pulmonary function test results, the Commissioner argues that the ALJ correctly used those results to determine that plaintiff did <u>not</u> meet or equal listing 3.02. However, given that questionable validity, the lack of x-ray or other imaging, and Dr. Keown's failure to adequately assess whether the kyphosis of plaintiff's spine was sufficiently severe to affect the interpretation of the tests, the Court finds that the ALJ's reliance upon the pulmonary function test results to determine that plaintiff did not meet listing 3.02 is not supported by substantial evidence.

The ALJ also relied upon Dr. Hellman's Medical Source Statement in concluding that plaintiff "should avoid <u>concentrated</u> exposure to pulmonary irritants, i.e., fumes, odors, dust, gases, poor ventilation, etc." (R. 30, emphasis added.) The ALJ then cited to Social Security Rulings 83-14, 85-15, and 96-9p, for the proposition that most sedentary work environments do not require such excessive exposure.

Social Security Ruling 96-9p states, "[r]estrictions to avoid exposure to odors or dust

9

must also be evaluated on an individual basis. The [residual functional capacity] assessment must specify which environments are restricted and state the extent of the restriction; e.g., whether only excessive or even small amounts of dust must be avoided." Social Security Ruling 85-15 states that where an individual can tolerate very little dust, etc., "the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."

Contrary to the ALJ's finding, Dr. Hellman did not indicate in his Medical Source Statement that plaintiff should avoid only concentrated amounts of pulmonary irritants. Dr. Hellman merely indicated that plaintiff was so restricted, without specifying the extent of the limitation. Therefore, the ALJ's conclusion that plaintiff should avoid only concentrated amounts of dust, fumes, etc., is not supported by substantial evidence.

The Court concludes that the ALJ's decision that plaintiff is not disabled is not supported by substantial evidence in the record and that essential factual issues remain to be determined. Therefore, the decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for a further administrative hearing. The Clerk of Court is directed to prepare a judgment.

IT IS SO ORDERED.

_____James D. Todd_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_15 September 2005_
DATE

10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 15 in case 1:04-CV-01216 was distributed by fax, mail, or direct printing on September 16, 2005 to the parties listed.

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Joe H. Byrd
BYRD DONAHOE & BYRD
P.O. Box 2764
Jackson, TN 38302--276

Honorable James Todd
US DISTRICT COURT